UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SARA M. STRAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3-15-CV-139 JD |
| | ) | |
| BOWEN CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

This is an employment case arising out of plaintiff Sara M. Strahan's former employment as a mental health technician with Bowen Center, a mental health care provider. Strahan alleges that Bowen Center interfered with her rights under the Family and Medical Leave Act and discriminated against her on the basis of her race, sex, and age when it terminated her employment. She filed this suit against Bowen Center and two of her former supervisors, Kenny Harris and Ginger McKee. Discovery has now closed and the defendants have moved for summary judgment, arguing that Strahan cannot establish that the decision to fire her was based on her membership in any protected class or that it interfered with her rights under the FMLA. For the reasons that follow, the Court denies the motion as to Ms. Strahan's race discrimination claim, but grants the motion as to the remaining claims.

## **I. STANDARD OF REVIEW**

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## II. FACTS

**A.     Legal Standard**

Before recounting the material facts in the case, the Court must address a plaintiff's burden in responding to a motion for summary judgment, in light of the bizarre nature of Ms. Strahan's response brief. For the most part, Ms. Strahan's response brief copies the defendants' opening brief verbatim, but with minor alterations to resolve issues in the opposite direction,[1] and with passing references to other evidence that Ms. Strahan argues creates disputes of fact. As one example, the defendants' statement of facts contains a paragraph discussing multiple instances in which Ms. Strahan failed to perform her job properly. Ms. Strahan's response brief includes that entire paragraph verbatim—including its introduction that "Strahan repeatedly

---

[1] For example, changing "Strahan failed to comply with Bowen Center's attendance policy," to "Strahan did not fail to comply with Bowen Center's attendance policy."

failed to perform various aspects [of] her regular job duties appropriately"—but then appends the following sentence to the end: "One [*sic*] again see Strahan and Regan's affidavits, Exhibits B and A, which contradicts [*sic*] these statements." [DE 31 p. 4].

That sort of approach does not satisfy a party's burden of identifying disputed facts in response to a motion for summary judgment. Under Rule 56(c)(1), "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1). That requires more than simply attaching exhibits to a brief and making blanket assertions that the exhibits create disputes of fact; it is not the Court's duty to comb through affidavits to find what portions of those affidavits contradict which of the many facts in a defendant's brief. Ms. Strahan's affidavit is seven pages long and includes nearly 200 pages of exhibits, and the Court need not attempt to determine what in those materials supports Ms. Strahan's arguments when her brief only cites generally to the affidavit as a whole. As the Seventh Circuit explained in *Packer v. Trs. Of Ind. Univ. Sch. Of Med.*:

> It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to *know* what portion of a witness's testimony the party is invoking so that it can focus its attention on that testimony and assess whether it is admissible and actually supports the fact or inference for which it is cited.

800 F.3d 843, 850 (7th Cir. 2015); *see also Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013) ("[A] district court is not required to scour the record looking for factual disputes or to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case."). Thus, the Court resolves the present motion based on the facts that are properly before it, meaning almost entirely those supplied by the defendants. *See* Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to properly address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion").

## B. Factual Background

Sara Strahan worked as a mental health technician at Bowen Center from May 2009 through June 25, 2014. In that position, Ms. Strahan assisted the doctors and nursing staff with mentally ill or special needs patients. While Ms. Strahan had many supervisors during her five years of employment with Bowen Center, defendants Kenny Harris and Ginger McKee served as her primary supervisors at the time of her termination. Mr. Harris was the Director of Nursing, and Ms. McKee was a staff nurse who supervised Ms. Strahan's shift and who directly supervised Ms. Strahan.

During Ms. Strahan's employment with Bowen Center, she received discipline on a number of occasions for being offensive toward co-workers. In 2010, Mr. Harris had to counsel her after staff members submitted complaints regarding her offensive interactions with them. In 2011, she received a verbal warning after supervisors received a complaint from a Philippian co-worker about a racially insensitive comment Ms. Strahan made pertaining to the co-worker's food. In 2012, Ms. Strahan refused to comply with instructions from her then-supervisor. She was reprimanded and suspended for one shift for cursing at her supervisor and leaving work early. Ms. Strahan received reprimands on other occasions for failing to perform aspects of her job duties correctly. For example, in 2011, Ms. Strahan was reprimanded for not properly identifying each patient by ID band before taking the patient's vitals. And in 2013, she failed to confiscate a pocket knife from a patient when admitting him. Additionally, Ms. Strahan was reprimanded for improperly auditing patient charts and documenting patient names for insurance purposes.

Further, Ms. Strahan violated Bowen Center's attendance policy multiple times during her employment. In January 2014, Ms. Strahan received a final written warning after she called in sick after her shift had already begun. Ms. Strahan knew at that time that any subsequent

4

attendance violation would result in her termination. Finally, in June 2014, Ms. Strahan reported that she would be five minutes late, but she arrived to work thirty-five minutes late. That same shift, she also left early without approval from her supervisor. Therefore, citing "ongoing issues with respect to communication and attendance," Bowen Center terminated Ms. Strahan's employment on June 25, 2014. [DE 25-4 ¶ 14]. Ms. McKee, who was Ms. Strahan's supervisor at the time, completed the paperwork recommending Ms. Strahan's termination, and Mr. Harris made the ultimate decision.

Ms. Strahan had applied for leave under the Family and Medical Leave Act during her employment. In August 2013, Ms. Strahan contacted Human Resources to request intermittent FMLA leave to care for her father. She was given a notice informing her that she was eligible for FMLA leave, and that she needed to return a completed medical certification form for her leave to be approved. However, Bowen Center denies that she returned the certification form at that time. In February 2014, Bowen Center provided the paperwork to Ms. Strahan again. Ms. Strahan alleges that she returned the completed paperwork shortly thereafter, though Bowen Center denies that it received the paperwork prior to when it terminated Ms. Strahan's employment. However, Ms. Strahan admits that Bowen Center never denied her requests for leave with respect to her father, and she offered no evidence that any of the absences that contributed to her firing were related to her need for FMLA leave.

### III. DISCUSSION

Ms. Strahan asserts claims for race, sex, and age discrimination and also for interference with her FMLA rights arising out of the termination of her employment. Though Ms. Strahan's complaint does not distinguish among the three defendants—Bowen Center, Mr. Harris, and Ms. McKee—only the FMLA permits claims to be brought against individuals in addition to employers. Accordingly, the Court construes the claims for race, sex, and age discrimination to

5

be brought solely against Bowen Center, with only the FMLA claim being brought against the individuals as well. The Court considers each claim in turn.

**A.      Race discrimination**

Ms. Strahan first claims that Bowen Center discriminated against her on the basis of her race when it terminated her employment. Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). There is no dispute that Ms. Strahan belongs to a protected class or that her employment was terminated, so the only question is whether a jury could find that she was fired because of her race. In resolving that question, the Court considers the evidence as a whole, without sorting the evidence into different categories and analyzing the categories under different tests.[2] *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "In adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David v. Bd. of Trs. of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

As evidence of discrimination, Ms. Strahan points to racially charged comments by two of her supervisors—the same individuals who recommended and decided on her termination. Ms. Strahan alleges that Ms. McKee, her direct supervisor, made racially charged statements on multiple occasions in the months prior to her termination. Ms. Strahan testified that Ms. McKee would say at least once a week that her father was in the KKK. She further testified that a "couple times," when Ms. McKee "would get frustrated with" her, the "'N' word" would "slip out." [DE 25-1 p. 45–48]. She also testified that in March 2014, only a few months before she

---

[2] As discussed below, the *McDonnell Douglas* burden-shifting framework also remains available as a means of defeating summary judgment, *Ortiz*, 834 F.3d at 766, though the Court need not reach that framework as to this claim.

was fired, she was updating Ms. McKee on a situation with a patient when Ms. McKee

"snapped" at her and used the "'N' word," saying, "'You're acting again, like an 'N'.'" [DE 25-1

p. 56]. Ms. Strahan further alleges Mr. Harris, the Director of Nursing, also made racially

charged comments. She testified that during one of their conversations, Mr. Harris told her to

"stop acting black" and to show up on time:

> It was like, "Well, you know, . . . you gotta be here on time." And I would look at him and I'd be like, "I'm always here on time. What are you referring to?" You know, "You need to stop acting black. Show up for meetings on time."

[DE 25-1 p. 34].

This evidence is sufficient to permit an inference that Ms. Strahan's termination was racially motivated. Ms. McKee recommended that Ms. Strahan be fired, and Mr. Harris made the decision to fire her, and both made comments indicative of a racial animus. There is also evidence from which a jury could find that this animus played a part in the decision to fire Ms. Strahan. Ms. Strahan was fired due to her attendance problems after she arrived to work thirty-five minutes late, and Mr. Harris had characterized being late as "acting black." That is particularly notable because there is evidence that Bowen Center's attendance policy was not uniformly applied or enforced, and that other employees who were not black were not disciplined for being late to work. In addition, Ms. McKee told Ms. Strahan she was acting "like an 'N'" when Ms. McKee was frustrated with her, which draws a connection between this racial animus and Ms. McKee's evaluation of Ms. Strahan's job performance. A reasonable jury could find on that basis that Ms. Strahan was fired because she is black, so Bowen Center's motion for summary judgment is denied as to Ms. Strahan's claim for race discrimination.

**B.     Sex discrimination**

Next, Ms. Strahan alleges that she was fired because of her sex, which is also a protected class under Title VII. 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment, Ms. Strahan

must present evidence that would allow a reasonable jury to find that her sex caused her firing. *Ortiz*, 834 F.3d at 765. Ms. Strahan first approaches that issue through the *McDonnell Douglas* burden-shifting framework, which the Seventh Circuit has described as "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David*, 846 F.3d at 224. To establish a prima facie case of sex discrimination under the *McDonnell Douglas* framework, Ms. Strahan must establish that: (1) she belongs to a protected class; (2) she performed her job according to Bowen Center's legitimate expectations; (3) she suffered an adverse employment action; and (4) Bowen Center treated similarly situated employees outside of her protected class more favorably. *Davis*, 846 F.3d at 225; *Atanus v. Perry*, 520 F.3d 663, 673–74 (7th Cir. 2008). If Ms. Strahan can satisfy that burden, Bowen Center must then articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Ms. Strahan to show that the explanation is pretextual. *Davis*, 846 F.3d at 225.

Ms. Strahan satisfies the first and third elements of the prima facie case, as she belongs to a protected class—she is female—and suffered an adverse employment action—she was fired. Ms. Strahan fails to show that similarly situated employees outside of her protected class were treated more favorably than her, though, so she cannot satisfy *McDonnell Douglas'* prima facie case. As to that element, Ms. Strahan bears the burden of showing that she was treated differently from people who, other than their sex, were "'directly comparable'" to her "'in all material respects.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014) (quoting *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011)). This entails a "flexible, common-sense, and factual" inquiry that asks whether the employees are similar enough that a reasonable factfinder could infer that the difference in treatment was attributable to the plaintiff's

protected class, as opposed to some other reason. *Alexander*, 739 F.3d at 981; *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). Relevant factors generally include "whether the similarly situated employee held the same position, had the same supervisor, was subject to the same standards, and engaged in similar conduct." *Alexander*, 739 F.3d at 981; *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) (noting that "the comparator must still be similar enough to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, so as to isolate the critical independent variable:" the plaintiff's protected class (internal quotation and alteration omitted)).

Ms. Strahan makes very little effort to meet this burden. In fact, she admits that both male and female coworkers we generally treated better than she was, and that another female helped fill in for her shifts after she was fired. She argues that some of her shifts were also covered by a number of male employees, but she makes no effort to show that those male employees were similarly situated. The entirety of her argument as to those employees is that her position "was also filled by white and Hispanic males"; she does not show that those employees had similar track records of performance and attendance problems such that they could qualify as similarly situated. [DE 31 p. 14]. Such undeveloped assertions do not satisfy a party's burden in responding to a motion for summary judgment, so the Court finds that Ms. Strahan has failed to make out a prima facie case under the *McDonnell Douglas* framework.

Ms. Strahan also argues that the evidence supports a finding of sex discrimination apart from the *McDonnell Douglas* framework. In deciding this question, the Court must consider the evidence as a whole to determine whether Ms. Strahan has "produced sufficient evidence to support a jury verdict of intentional discrimination." *David*, 846 F.3d at 224; *Ortiz*, 834 F.3d at 765. As evidence of sex discrimination, Ms. Strahan relies on comments made to her by her co-

workers regarding her sex. She testified that one of her co-workers said that she worked slower because she was a woman. She also testified that after she was fired, other co-workers told her that they wanted all males on the third shift. These comments were each made by Ms. Strahan's co-workers, though, not the supervisors who made the decision to fire her, so those statements do not support a finding that the supervisors' decision was discriminatory. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013) ("Standing alone, biased comments do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision."); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000) (stating that "allegedly discriminatory statements are relevant . . . only if they are both made by a decisionmaker and related to the employment decision at issue"). Ms. Strahan also notes that her shift was covered in part by males after she was fired, but as just discussed, she has not shown that those individuals were similarly situated to her. Moreover, her shifts were also covered in part by another female, so that factor cannot support an inference of discrimination on account of sex. Therefore, the Court finds that Ms. Strahan has not presented evidence from which a jury could find that she was fired because of her sex, so the Court grants summary judgment as to this claim.

## C.     Age discrimination

Ms. Strahan next asserts a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), alleging that she was fired because of her age, which was 42 at the time she was fired. Like with her sex discrimination claim, Ms. Strahan argues that she can prove discrimination both through the *McDonnell Douglas* burden-shifting framework and also through circumstantial evidence in general. Ms. Strahan's claim fails under the *McDonnell Douglas* framework for largely the same reasons as the previous claim, though, as she has not shown that she was treated less favorably than other similarly situated employees who were substantially

younger than her. She even admits that two of her three co-workers on her shift were older than she was, and that another employee who was over 40 years old was not disciplined for performance problems similar to hers. Ms. Strahan's only argument on this point is that "several individuals, younger males and female employees, covered the hours that would have been [her] shift" after she was fired. [DE 31 p. 17]. Again, though, she fails to show that those other employees were in fact similarly situated, in that they had a similar record of performance and attendance problems, such that the disparity in treatment could reasonably be attributed to the difference in age.

In addition, Ms. Strahan argues only that these other employees were "younger" than her, without saying by how much. In an age discrimination claim, it is not enough for a plaintiff to show only that other employees who received more favorable treatment are younger than they are; if the age disparity is small, the difference in treatment will not support an inference of discrimination. A plaintiff must typically show that the comparators are "substantially younger," which generally means at least ten years younger. *Filar*, 526 F.3d at 1060 (articulating the fourth element of the prima facie case of an ADEA claim as whether "the employer treated 'similarly situated' employees at least ten years younger more favorably"). By failing to identify any other employees' ages, Ms. Strahan has failed to make that showing.[3] Accordingly, she cannot prove age discrimination though the *McDonnell Douglas* framework.

Ms. Strahan fares no better outside the burden-shifting framework. She again cites to age-related comments made by her co-workers, but offers no connection between those comments and her supervisors' decision to fire her. She also alleges that one of her co-workers put a post-it

---

[3] Ms. Strahan's brief makes the conclusory statement that she was "replaced by a substantially younger employee," [DE 31 p. 17], but that sort of bare assertion does not satisfy a party's burden at summary judgment.

11

note with her name on it on an instructional guide that Bowen Center created to assist the mental health technicians in performing their audits correctly, which Ms. Strahan found insulting. Even if that note was intended as an insult to Ms. Strahan's job performance, though, it is not apparent how that has anything to do with her age. And again, that conduct by a co-worker does not support an inference that Ms. Strahan's supervisors discriminated against her in deciding to terminate her employment. Accordingly, Ms. Strahan has failed to submit evidence from which a reasonable jury could infer that she was fired because of her age, so the Courts grants summary judgment as to this claim, too.

**D.     FMLA interference**

Last, Ms. Strahan asserts claims against each of the defendants—Bowen Center and her supervisors, Mr. Harris and Ms. McKee—for interfering with her rights under the FMLA. The FMLA allows eligible employees to take up to twelve workweeks of leave within a twelve-month period in order to care for an immediate relative with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). An employee can take this leave on an intermittent basis if necessary. *Id.* § 2612(b)(1). An employee who utilizes this leave is entitled to be restored to the same or an equivalent position upon their return, and an employer may not "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided" under the FMLA. *Id.* § 2615(a). To establish a claim for interference with her FMLA rights, Ms. Strahan must establish that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.[4] *Goelzer*

---

[4] Ms. Strahan does not pursue a claim for retaliation, nor has she presented evidence that the defendants fired her because she exercised rights protected by the FMLA.

*v. Sheboygan County*, 604 F.3d 987, 993 (7th Cir. 2010); *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

In moving for summary judgment, the defendants acknowledge that Ms. Strahan was eligible for the FMLA's protections and that Bowen Center is a covered employer. They argue, though, that Ms. Strahan failed to submit a completed medical certification form to confirm she was entitled to FMLA leave, and they also argue that they never denied her requests for FMLA leave, meaning they provided all the benefits to which she was entitled. In responding to the defendants' motion, Ms. Strahan only contests the first argument, as she claims that she did submit a completed medical certification form prior to her termination. However, she never identifies how the defendants denied her any FMLA benefits to which she was entitled. In fact, her brief openly admits that she received all the leave she requested: "Further, and most significantly, Strahan concedes that Bowen Center never denied her requests for FMLA leave with respect to her father from August 2013 through August 2014."[5] [DE 31 p. 19]. She likewise admits that Bowen Center accommodated her when she requested leave to care for her sister in 2012. Ms. Strahan does not claim that any of the absences that led to her firing were related to her intermittent FMLA leave, either. In sum, she has failed to identify any way in which the defendants interfered with her rights under the FMLA, so the Court grants summary judgment on this claim.

## IV. CONCLUSION

The defendants' motion for summary judgment [DE 24] is GRANTED in part and DENIED in part. Summary judgment is granted as to Ms. Strahan's claims for sex and age

---

[5] Like most of Ms. Strahan's brief, this passage was copied verbatim from the defendants' brief. It is possible that Ms. Strahan did not mean to include this passage in her brief, but it is not the Court's job to construct arguments for her when her own filing concedes away her claim.

discrimination and for FMLA interference, but is denied as to Ms. Strahan's claim for race discrimination. Therefore, this action remains pending only as to Ms. Strahan's claim against Bowen Center for race discrimination. Kenny Harris and Ginger McKee, who were defendants only as to the FMLA claim, are terminated as defendants in this case.

SO ORDERED.

ENTERED:  March 6, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court